STATE EX REL. DOERING, Respondent, vs. DOERING and wife, Appellants.

*April 8—May 4, 1954.*

For the appellants there was a brief by *Rhyner, Hosek & Zappen* of Marshfield, and oral argument by *Edward F. Zappen.*

MARTIN, J. Respondent petitioner did not appear to contest the appeal because, we are advised, of the lack of funds to defray the expenses in connection therewith. There have been cases where under such circumstances we have reversed the judgment under the rules of the court. However, the custody of a minor child is a most serious matter and we have decided to consider the case on its merits. The record shows that petitioner and her husband are persons of limited means. The expense of the appeal was thrust upon her and we can understand her reluctance to incur the further financial indebtedness that would be brought about thereby.

Petitioner is the mother of Everett Herman Doering, whose custody she seeks, and the daughter of the appellants. The child was born out of wedlock June 29, 1946, when petitioner was twenty-one years old. She had no means of supporting the child alone, so she brought him to her parents' home and for most of the time thereafter until her marriage to Edward Meyers on February 28, 1949, the baby was taken care of by its grandparents while petitioner worked. During the seven years of the child's life petitioner contributed about $700 to its support. The grandparents provided the remainder. The boy believes that Stella is his sister and regards the Doerings as his parents.

The evidence, though conflicting in many respects, supports the trial court's view that petitioner has never been willing to give up her rights to the child. It is true that until her marriage, Stella was satisfied to leave the care and

responsibility of the boy to her mother, but it is also clear that on several occasions she refused to consent to his adoption by appellants. She visited the child regularly until her parents denied her that right, brought him gifts on his birthdays, etc., and contributed to his support according to her means.

Shortly after her marriage to Meyers she consulted with Mrs. Rusk, the Wood county children's board caseworker, about getting custody of the boy and was told to get the child if she wanted it. When she went to appellants' farm to get him the grandmother refused. On a later occasion, some three years before this hearing, the matter was discussed with the county judge who wrote a letter to the Doerings stating that he believed the mother was entitled to the child's custody unless it could be shown that she was unfit. The evidence shows that when Mrs. Doering received this letter she became "ill." Stella was sent for, and it is her testimony that on that occasion Mrs. Doering made her promise not to take the child "because every time I tried to take him she had some kind of a spell." A year or so before the hearing Mrs. Doering told petitioner and her husband that they were not welcome at the farm.

There is no question but that both the Doering and the Meyers homes are proper homes for the child. He has been well cared for by the appellants. The evidence also shows that the Meyers have an adequate home; Mrs. Doering herself testified that it is about the same as her own. Edward Meyers has worked at a factory in Marshfield steadily since 1937, except for several years' service in the army, and is earning $60 a week.

A good deal of criticism of Stella, in the testimony of the Doerings, is directed to the manner in which she treats the child and her use of vulgar language, but what it comes down to is pretty much a difference of opinion as to disciplining him. There is no evidence that any spanking by Stella has

been mean or cruel. A sister-in-law of the petitioner testified that her two children think a lot of Stella and her husband and that her little girl particularly visits them frequently, having many of her meals at the Meyers home.

Many pages of the record are devoted to testimony by the Doerings that Stella has repeatedly said she would kill the child, but we cannot see that such alleged threats were ever taken seriously. While still living at her parents' home Stella often had the care of the child. And since her marriage he has been allowed to visit the Meyers home for several days.

The principal objection to the fitness of Edward Meyers is that he drinks excessively. Such testimony comes mainly from the grandmother, who feels that any drinking is morally wrong. There is no evidence that Meyers drinks anything but beer, but he has on occasion had seven or eight glasses, which makes him a drunkard in the eyes of Mrs. Doering. It is plain from all the evidence that the Doerings never liked Meyers and objected to Stella marrying him.

Meyers testified that he likes the boy, is willing and anxious to take him, and has consulted an attorney with respect to adopting him. Mrs. Doering admitted that Meyers has always treated the boy kindly. Considering his testimony in its entirety, Meyers has shown, in our opinion, an admirable sense of responsibility toward both his wife and the child.

After the marriage when Stella sought the child's custody, the grandmother indulged in a course of conduct toward the boy with the intent of alienating him from his mother and her husband. As stated in the trial court's opinion:

"There is little question but what the child has a fear of Edward and Stella Meyers. In this connection it should be mentioned that the court interviewed the child alone. The court was satisfied that the child had a real fear of his mother and his stepfather, but I asked the child why he feared them and he said they would want to hurt him. I asked him who

told him that and he said his mother did. Of course, he was referring to his grandmother. He also said that Ed was a drunkard and I asked him who told him that and he said his mother. He stated that he feared that they would come and steal him."

Stella is the mother of this child. She is entitled to his custody unless the welfare of the child requires that he remain where he is. It has always been the attitude of this court that a proper regard for the sanctity of the parental relation requires that any objection to the parent's fitness be sustained by clear and satisfactory proof. *In re Stillman Goodenough* (1865), 19 Wis. *274. In view of the thorough preparation and presentation of this case and from the fact that the appellants have made no attempt to impugn the moral character of the petitioner, we must assume that she is now of good character and reputation and in that respect a proper person to have custody of her child.

The picture presented by this record is plain. At the time of the child's birth the petitioner, resenting the circumstances in which she found herself and anxious to avoid the stigma attached to them, willingly agreed to have the child brought up as that of her parents. She was not willing, however, to give up her legal right to the boy and when, upon her marriage, it became possible for her to give him a proper home, she endeavored to exercise that right and fulfil the responsibility which she had theretofore left to her parents. In the meantime, however, the grandmother had developed a close attachment to the boy and when faced with the possibility of losing him, sought to keep him by making him fearful of his mother.

In this unfortunate situation what is best for the child? According to Mrs. Rusk—although it was her opinion (knowing only the circumstances of the Doering home) that the boy would be emotionally disturbed if he were given to

the mother—he is now confused and worried and should not be allowed to continue in that state of mind. Such confusion and fear, however, have been brought about entirely by the false statements of the grandmother to the boy that the Meyers wanted to steal him and hurt him. Under these circumstances no great weight can be placed upon the boy's choice to remain with his grandparents. They do indicate, however, along with the fact of Mrs. Doering's "spells" when confronted with Stella's desire to take the boy, a certain emotional instability of the grandmother in her relation to this boy. We feel that the trial court seriously considered all these elements of the situation and used his discretion wisely in deciding that the welfare of the child would be better served in the mother's home. We have also considered the ages of the parties. The grandfather is seventy-two, the grandmother forty-six. Obviously the situation in the Doering home will be altered in some respects within a comparatively few years, while the child here involved is still quite young.

Removing the boy from his grandparents' home at seven and one-half years of age should have no serious lasting consequences. It will sever no ties that cannot be replaced by others which will be formed in the mother's home. While some emotional disturbance will undoubtedly be experienced by the child in the transfer, we feel, as did the trial court, that it will be only temporary. At his tender age there is no reason to believe that the adjustment will so disturb him as to affect his future happiness.

Appellants cite *Jones v. State ex rel. Falligant* (1933), 211 Wis. 9, 247 N. W. 445, where this court reversed a judgment which gave the child to its parents, but the distinguishing feature between that case and this one is the age of the child, there fourteen. In the situation here before us, where it cannot be said that the boy is capable of making

an intelligent choice and the choice he has expressed is the result of deliberate alienation on the part of the grandmother, it is our opinion that the finding of the trial court is supported by the great weight and clear preponderance of the evidence. That court was in the best position to weigh the evidence, having the benefit of observing the attitude and demeanor of the witnesses in evaluating the credibility of their testimony.

*By the Court.*—Judgment affirmed. No costs allowed; appellants to pay the clerk's fees.

FAIRCHILD, C. J. (*dissenting*). This dissent I deem necessary for two reasons: (1) Because the rule that the welfare of the child is of prime consideration was overlooked by the trial court, and this is a substantial error; and (2) because this is a proper case for invoking Rule 32 of the Supreme Court Rules so as to reverse the judgment because of the failure of the respondent to file a brief or present oral argument.

We do not know where the trial court thought the child's best interests lay. It seems to have considered that our decisions have established a rule that, unless a parent is held to be unfit, he or she has an absolute right to the custody of the child. As a general thing, but not invariably, the child's best interest will be served by living in its parent's home. If circumstances compel a contrary conclusion, the interest of the child, not a supposed right of even a fit parent to have custody, should control. The trial court was mistaken when it said in its memorandum opinion, "Under the decisions of this state the court has no choice but to grant custody of this child to its mother." The appellants have had custody of this child by consent of all parties throughout all seven and one-half years of the boy's life. The child has been taught to believe that his grandmother is his mother, and that his real mother is his sister. A transition in custody now would

necessarily bring about a tragic situation in which the child would seriously suffer. The court recognized the emotional effect upon the child and added a note of regret in issuing the order, saying, "The court will not order but I do suggest that if some transitional period can be worked out, that all parties to this action co-operate in seeing that the emotional shock to the child is lessened as much as possible." The court also said in his decision, "The writer is not unmindful of the fact that the child is going to suffer a severe emotional shock in the transfer of custody to his mother, but I feel that that will be temporary and it can be lessened a great deal by co-operation between the parties, if that co-operation is possible." We note also the testimony of the welfare worker as to the immediate effect upon the child, where she says, "I firmly believe that you are going to have an emotionally disturbed child as a result of this, on a transfer at this time. He is not old enough to reason out these things. To him, he is being taken from his mother and father, which of course, is not true, but he does not know, but somebody is going to tell him, you can rest assured of that, and you are going to have a sick little boy, that I am positive of."

Since the child's mother married, about five years before this proceeding was started, there have been indications and attempts at times by the real mother of the child to change the custody from the grandparents to her. Each of these efforts, however, have been discontinued, and the child permitted to stay with the grandparents. This last effort likewise was evidently abandoned after the court below entered his order granting her the custody of the child. This is borne out by the fact that the attorney for the respondent mother was willing to accept a note for his fees on the appeal, and in spite of such offer the mother declined to authorize him to defend the appeal. Assuming, as I believe we must from the record, the willingness of the mother to assist in lessening the shock to the child, her refusal to proceed with this appeal

appears to be attributable to such an attitude. Such failure to proceed on her part warrants reversal of the judgment under Supreme Court Rule 32, which provides: "When a cause is submitted or presented by counsel for appellant or plaintiff in error, but not by the opposing party, the judgment or order appealed from may be reversed as of course, without argument."

In view of the circumstances, I respectfully dissent.

I am authorized to say that Mr. Justice BROWN and Mr. Justice CURRIE concur in this dissent.